PEOPLE v JOHNIGAN

Docket Nos. 250909, 251408. Submitted January 12, 2005, at Detroit. Decided March 22, 2005, at 9:00 a.m. Leave to appeal sought.

Edward Johnigan was convicted by a jury in the Wayne Circuit Court, Thomas E. Jackson, J., of first-degree, premeditated murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. In another jury trial presided over by the same judge in the same court, involving a second homicide, the defendant was acquitted of murder and felony-firearm, but convicted of being a felon in possession of a firearm. The defendant was sentenced to imprisonment for life for the murder conviction, thirty-eight to sixty months for felon in possession of a firearm, and five years for felony-firearm, and for life imprisonment as a fourth-offense habitual offender for the other felon in possession of a firearm offense. The defendant appealed on the bases that the trial court abused its discretion in admitting evidence of a third homicide and that the trial court erred in the enhanced sentencing of the defendant to life in prison for the second conviction of being a felon in possession of a firearm.

The Court of Appeals held:

1. Use of other acts as evidence of character is generally excluded to avoid the danger of conviction based on a defendant's history of misconduct. MRE 404. They may be used for other reasons such as motive. In this case, the trial court correctly found a compelling justification for admitting testimony about stockpiling of weapons by the defendant for use in his occupation of contract killer to counter the defendant's representation of the informant as a false witness. Without this evidence, a gap would have been left, making the witness vulnerable to disprovable allegations of fabrication.

2. The trial court erred in sentencing the defendant to life imprisonment for the second conviction of felon in possession of a firearm. The court did not note on the record that the sentence departed from the sentencing guidelines range, did not articulate what substantial and compelling reason justified a departure, and did not explain why that reason justified the particular departure. For an appellate court to affirm a sentence that departs

from the guidelines, the trial court must articulate the reason for the departure and explain why that reason justified the particular departure. This case must be remanded for a resentencing on the second conviction of felon in possession of a firearm.

Affirmed in part and remanded for resentencing in part.

SCHUETTE, P.J., concurring in the conclusions reached in the lead opinion, stated that the case must be remanded to the trial court for an articulation of the reasons for the defendant's sentence for the second conviction of felon in possession of a firearm.

O'CONNELL, J., dissenting, stated that life imprisonment is a determinate sentence that does not, and may not, carry a minimum term, so the legislative sentencing guidelines, which propose a minimum term, should not apply. If the guidelines did apply, because the trial court placed on the record substantial and compelling reasons justifying departure from the sentencing guidelines minimum range, the sentence should be affirmed.

SENTENCES — SENTENCING GUIDELINES RANGE — DEPARTURE — ARTICULATION OF REASON.

The Court of Appeals cannot review a departure from the sentencing guidelines for abuse of discretion in the absence of the sentencing court's articulation of a reason for the departure and explanation of why the reason justifies the departure; where such an articulation and explanation are lacking, the Court of Appeals will remand for a resentencing.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Ana Quiroz*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Marla R. McCowan*) for the defendant.

Before: SCHUETTE, P.J., and SAWYER and O'CONNELL, JJ.

SAWYER, J. In Docket No. 251408, defendant was convicted, following a jury trial, of first-degree, premeditated murder, MCL 750.316(1)(a); felon in posses-

sion of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b, arising out of the murder of Larry Rogers. Defendant was sentenced to life imprisonment for the first-degree murder conviction, thirty-eight to sixty months' imprisonment for the felon in possession of a firearm conviction, and five years' imprisonment for the felony-firearm conviction. In Docket No. 250909, defendant was convicted, following another jury trial, of felon in possession of a firearm. In that case, defendant was charged with killing Michael Moore, but the jury found defendant not guilty of murder and felony-firearm. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to life imprisonment. We affirm defendant's convictions, but remand for resentencing in Docket No. 250909.

Defendant first argues that the trial court abused its discretion in admitting evidence regarding the murder of Ian French and evidence of unrelated weapons found in defendant's house. We disagree. We review for a clear abuse of discretion a trial court's decision to admit evidence pursuant to MRE 404(b).[1]

Use of other acts as evidence of character is generally excluded to avoid the danger of conviction based on a defendant's history of misconduct.[2] A proper purpose for admission is one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense.[3] In this case, the prosecutor could have relied on several legitimate purposes, "motive" chief among them, for introducing evidence that defendant acted in his role as a hired

---

[1] *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998).

[2] *Id.* at 495.

[3] *Id.* at 496.

killer.[4] In this case, however, the trial court found a compelling justification in the prosecutor's inability to counter defendant's representation of the informant as a false witness, and we agree. In *Starr*,[5] our Supreme Court recognized that a prosecutor may introduce evidence of other acts for the proper purpose of demonstrating a lack of mistake (or fabrication) in a witness's accusations. In that case, a defendant's adopted daughter alleged sexual abuse against her father only after his stepdaughter accused him of similar conduct.[6]

In this case, the informant testified that defendant told him that he was stockpiling weapons to use in his new vocation as a "hit man." Defendant also hinted or outright revealed to the informant beforehand his intention to commit the three murders and verified them after they were accomplished. As in *Starr*, the evidence introduced in this case confirmed that the prosecution's key witness did not merely invent the circumstances of the criminal activity.[7] The evidence demonstrated that defendant often accurately bragged of his criminal exploits to the informant, perhaps to recruit him for other murders or merely for personal aggrandizement. As in *Starr*, the exclusion of this evidence would have left an inexplicable gap in the sequence of events that reasonably led the police and prosecutor to give credence to the witness's incrimination of defendant.[8] This gap would have left the witness vulnerable to disprovable allegations of fabrication.[9] Because this case so

---

[4] MRE 404(b).

[5] *Starr, supra* at 500-501.

[6] *Id.* at 501-502.

[7] *Id.*

[8] *Id.*

[9] *Id.*

closely mirrors *Starr*, we find no abuse of discretion in the trial court's decision to admit the "other acts" evidence.

Defendant next argues that the prosecutor improperly vouched for the credibility of the informant and improperly emphasized defendant's character. We disagree. Defendant failed to preserve this claim of error in Docket No. 251408, and, because a curative instruction could have displaced any prejudicial effect, we do not find any error requiring reversal.[10] In Docket No. 250909, defendant's brief on appeal does not include any specific citation to prosecutorial misconduct in the record. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."[11] Moreover, defendant's argument amounts to a claim that the prosecutor reiterated improper "other acts" evidence in closing arguments. Because the admission of this evidence was not error, the prosecutor's arguments on the evidence do not require reversal.

Defendant also argues that the trial court erred in sentencing defendant to life imprisonment for the felon in possession of a firearm conviction in Docket No. 250909. We agree and remand for resentencing.

The sentencing guidelines in this case recommended a minimum sentence in the range of twenty-four to seventy-six months. Nonetheless, the sentencing judge sentenced defendant to life in prison. At no time did the sentencing judge indicate that he understood that his sentence departed from the sentencing guidelines, nor

---

[10] *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003).

[11] *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

did he specifically indicate what facts justified a departure. Specifically, the judge explained the sentence imposed as follows:

> Okay. What I'm looking at here is the, let's see, all right, on this particular case, No. 03-4489, I think that we're all, we're kind of maybe surprised in some ways at the verdict in this particular case, at least in terms of the fact that they found not guilty on the other one but also found guilty on the possession of a firearm by a felon, and maybe that information as indicated is that they were focused on the circumstances of the arrest and weapons that were found at that time. The whole history of Mr. Johnigan, you know, looking at his entire record going back to the 1986 robbery armed there in 1990 had robbery armed and the felony firearms that occurred, you know, there and then he was put in prison and even while in prison he had a conviction of possession of some kind of improper illegal weapon, and having served a term from 1990 to 2002 and then being [paroled] and then being almost immediately involved with the cases that are here, I think what we have here obviously is a person who has decided to be involved with crime whenever there is the opportunity to do so, and to me almost beyond, you know, rehabilitation. The charge does allow, even though it was a firearm in possession by a felon for normally would carry five years, but as an habitual he can get up to life on that and I'm going to impose that particular sentence on that particular case, 03-4489, as a habitual 4th and put him on life sentence for that.

A trial court is required to choose a minimum sentence within the guidelines range unless there is a substantial and compelling reason to depart from the guidelines.[12] The sentencing court must articulate on the record a substantial and compelling reason for its particular departure and explain why that reason jus-

---

[12] *People v Babcock*, 469 Mich 247, 272; 666 NW2d 231 (2003) (opinion appendix).

tifies that particular departure.[13] In reviewing the sentencing court's decision, this Court may not affirm a sentence on the basis that a substantial and compelling reason exists that was not articulated by the trial court.[14] We may uphold a sentence that departs from the guidelines where some of the reasons given are substantial and compelling while others are not, provided that we are able to determine that the trial court would have departed to the same extent on the basis of the permissible factors alone.[15] Ultimately, we review for an abuse of discretion the trial court's determination that the objective and verifiable factors constitute a substantial and compelling reason for departure.[16]

We do not necessarily disagree that the circumstances of this case present objective and verifiable factors that establish substantial and compelling reasons to depart from the sentencing guidelines and impose a life sentence. But, as *Babcock* makes clear, we cannot affirm a sentence merely because we find there to be a substantial and compelling reason to depart from the guidelines. Rather, it is necessary that the trial court does so. Not only must the trial court articulate the reason for the departure, but it must also "explain why this reason justifies *that* departure."[17] In the case at bar, the sentencing judge does not acknowledge that he is departing from the sentencing guidelines, much less explain why the reasons he cites justify the particular departure made. That is, while the court explains the reasons for the sentence imposed, it does not

---

[13] *Id.*

[14] *Id.* at 273.

[15] *Id.*

[16] *Id.* at 274.

[17] *Id.* at 272.

explain why it believes that the guidelines range is inadequate under the circumstances of this case.

Furthermore, it is difficult to conclude that the trial court did not abuse its discretion when there is no indication that the trial court understood the nature and extent of its discretion. Or, to put it another way, without knowing that the trial court understood that it was departing from the guidelines, we cannot say with any degree of certainty that, if the trial court did understand that it was departing from the guidelines by imposing a life sentence, that it "would have departed, and would have departed to the same degree . . . ."[18]

Turning to the opinion of our dissenting colleague, there are a number of points with which I take issue. First, our colleague suggests that the sentencing is rendered moot by this Court's recent decision in *People v Mack*.[19] I begin my analysis of *Mack* by noting that its interpretation of MCL 777.21(2) is erroneous. The critical error in *Mack* is that it overlooks the language of MCL 777.21(2), which provides as follows: "If the defendant was convicted of multiple offenses, subject to section 14 of chapter IX, score each offense as provided in this part." Section 14 of chapter IX is MCL 769.14, which is inapplicable here (or in *Mack*). *Mack* does correctly note that MCL 771.14 only requires the presentence investigation report to include guidelines scoring for the highest crime class. But that does not change the fact that MCL 777.21(2) directs that all crimes be scored, except as provided by MCL 769.14.

Admittedly there is a certain lack of logic to the Legislature only requiring the presentence investigation report to include the scoring for the highest of-

---

[18] *Id.* at 273.

[19] 265 Mich App 122; 695 NW2d 345 (2005).

fense, but requiring the trial court to score all offenses. Perhaps the Legislature intended to reference § 14 of chapter XI (MCL 771.14) in MCL 777.21(2), which would produce the result reached in *Mack*. But the Supreme Court has made it clear that it is our responsibility in interpreting statutes to determine what the Legislature said, not what it intended to say. Where the language of a statute is unambiguous, we presume that the Legislature intended the meaning clearly expressed and we are not permitted to engage in further construction of the statute.[20] Departure from a literal construction of the statute is only permitted if such a construction would produce an absurd and unjust result, which would "be clearly inconsistent with the purposes and policies of the act in question."[21] Furthermore, the "absurd result" rule cannot be used to defeat a statute's clear meaning.[22]

In the case at bar, while the language used by the Legislature in MCL 777.21(2) may produce an illogical and even unintended result, the language is not ambiguous and therefore this Court is not permitted to construe it in any manner other than as written. Accordingly, the result that the *Mack* Court should have reached is that, under the clear language of MCL 777.21(2) as written, a sentencing court must score the sentencing guidelines for all offenses that fall within the scope of the guidelines. We note that this does

---

[20] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

[21] *Id.* at 403-404, citing *Salas v Clements*, 399 Mich 103, 109; 247 NW2d 889 (1976).

[22] *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 143; 662 NW2d 758 (2003); see also *People v McIntire*, 461 Mich 147, 157; 599 NW2d 102 (1999), wherein the Supreme Court chastised the Court of Appeals for invoking the "absurd result" rule merely to avoid an "illogical result."

not produce an irresolvable conflict with MCL 771.14(2)(e)(ii), which requires the probation department to prepare a presentence investigation report with a sentencing guidelines range recommendation for only the highest crime class among multiple crimes carrying concurrent sentences. The effect of the two statutes as written is that, while the probation department need only score the guidelines for the highest crime, the sentencing court must score the guidelines for the remaining crimes as well. It is not for this Court to speculate whether that is the result intended by the Legislature or to attempt to rewrite the statues involved if it is not.

Ultimately, however, we need not create a conflict with the *Mack* decision because we do not believe that it controls here. Under MCL 771.14(2)(e)(ii), the guidelines are scored for "each crime having the highest crime class." The only one of defendant's convictions that is assigned to a crime class is the felon-in-possession conviction, which is a class E felony.[23] Neither first-degree murder nor felony-firearm is covered by the sentencing guidelines, presumably because both carry mandatory and determinate sentences. Therefore, the "highest class" felony in the case at bar was the felon-in-possession conviction and, therefore, even under *Mack*, the sentencing court was obligated to score the guidelines for that conviction.

Turning to the other points raised by the dissent, the dissent first indicates that we have conceded that the sentence was proportionate to the crime.[24] We have made no such concession; rather, we merely make the point that, while a departure may well be justified, we cannot make any determination on the appropriateness

---

[23] MCL 777.16m.

[24] *Post* at 479.

of the sentence until the sentencing judge in the first instance properly imposes sentence. If the sentencing judge imposes a sentence that exceeds the guidelines and articulates the reason for the departure, then, and only then, can we make the determination that the sentencing judge imposed a proper sentence (i.e., that the departure was justified). In short, an observation that a departure is not obviously inappropriate is not, as the dissent suggests, equivalent to a determination that the sentence imposed, which departs from guidelines and for which the trial court did not articulate a basis for departure or even acknowledge that it was a departure, is proportionate to the crime.

Next, the dissent observes that a defendant convicted of being a felon in possession of a firearm as a fourth-offense habitual offender may be sentenced to life in prison. MCL 769.12 in fact authorizes a life sentence for any fourth-offense habitual offender if the underlying offense is a five-year felony or greater. But that says nothing about whether imposing a life sentence in a particular case represents a departure from the sentencing guidelines and, therefore, the trial court is subject to the requirements and limitations imposed by statute regarding such departures. Indeed, the felon-in-possession statute would legally authorize the imposition of a sentence of three to five years for a defendant who was convicted without a habitual-offender enhancement. But that is not to say that the sentencing guidelines in a particular case might only recommend a minimum sentence of less than three years. In which case, although the sentencing judge could legally impose a sentence of three to five years, it would represent a departure from the sentencing guidelines and, therefore, the sentencing judge would have to comply with the requirements for a departure. The same principle applies here: a life sentence may be lawfully imposed,

but to do so the trial court was obligated to follow the departure rules because the sentencing guidelines did not recommend a sentence of life in prison.

The dissent next turns to *People v Houston*,[25] which held that a life sentence is a departure if not recommended under the guidelines. Our dissenting colleague indicates that he disagrees with *Houston* and would not follow it if it were not binding precedent.[26] I also disagree with *Houston*, but not for the basic proposition that a sentence of life in prison represents a departure from the sentencing guidelines if not authorized by the guidelines. Rather, I disagree with *Houston*'s conclusion that the guidelines authorize a sentence of life in prison for a habitual offender whenever the upper end of the minimum sentence range is more than three hundred months as calculated under MCL 777.21(3).[27]

As *Houston* correctly noted, the Legislature did not produce separate grids for the habitual offender enhancements.[28] Rather, MCL 777.21(3) directs that, when determining the sentencing recommendation for a defendant being sentenced as a habitual offender, the minimum sentence range for an unenhanced sentence is determined and then the upper limit of that range is increased by twenty-five percent, fifty percent, or one hundred percent, depending on whether the defendant is a second-, third-, or fourth-offense habitual offender. As a result, the guidelines for a habitual offender will never provide a recommendation of a life sentence for a

---

[25] 261 Mich App 463; 683 NW2d 192 (2004).

[26] Which raises the question why our colleague is dissenting rather than concurring if he acknowledges that there is a binding case that compels the result reached in the case at bar.

[27] *Houston, supra* at 474-475.

[28] *Id.* at 474.

habitual offender unless the recommendation for a
nonhabitual offender also provides a recommendation
of a life sentence.

The Court in *Houston* then determined that under
the basic sentencing grid for second-degree murder, in
the twelve cells (out of a total of eighteen) in which the
upper range of the recommendation is three hundred
months or more, there is also provided the alternative
of life.[29] *Houston* also observed that in only one instance
where the upper end of the range is less than three
hundred months do the guidelines recommend life.
*Houston* then concluded that, in light of this "clear
guidance" by the Legislature, a life sentence for a
defendant sentenced as a habitual offender is within the
guidelines whenever the upper limit of the range, as
calculated under MCL 777.21(3), is three hundred
months or greater.[30]

There is no justification for the *Houston* Court's
interpretation of the statute. The legislative scheme for
establishing sentencing guidelines recommendations
for habitual offenders in MCL 777.21(3) is clear and
unambiguous. Accordingly, further construction is nei-
ther required nor permitted.[31] I do not disagree with the
proposition that the Legislature has not adequately
dealt with the issue of life sentences for habitual
offenders under the sentencing guidelines. A strong
argument can certainly be made that the sentencing
guidelines ought to provide for the alternative of a life
sentence for a habitual offender in circumstances where
the recommendation for a nonhabitual offender with
the same scoring under the guidelines does not provide
for the alternative of life in prison. The scheme offered

---

[29] *Id.* at 475.

[30] *Id.*

[31] *DiBenedetto, supra* at 402.

by *Houston* certainly would be a reasonable and workable way to address this issue. It would make sense to me for the Legislature to provide in MCL 777.21(3) that whenever the recalculated upper limit for a habitual offender meets or exceeds three hundred months, life would become an available alternative under the guidelines. But the Legislature has not so provided in the statute, and it is improper for this Court to rewrite the statute to add such a provision.

For the above reason, I, like our dissenting colleague, disagree with *Houston*. But, because we reach the same result in the case at bar as would be reached under the holding in *Houston*, there is no basis for us to request the convening of a conflict panel.[32]

The dissent next argues that the guidelines do not apply to life sentences at all because a life sentence is a determinate sentence without a minimum to be imposed. This overlooks the fact that the Legislature has specifically provided for the alternative of a life sentence in sixteen cells of the various guidelines grids.[33] If the Legislature shared the dissent's view that life sentences, because they are determinate in nature, are simply outside the scope of the guidelines, there would have been no reason to include the words "or life" in those sixteen cells. Statutes are to be interpreted in a manner that gives meaning to each word, phrase, and clause used.[34] The dissent's argument simply renders meaningless the phrase "or life" as used by the Legislature sixteen times.

The dissent attempts to dismiss this inconvenient fact by stating that the fact that the guidelines do

---

[32] MCR 7.215(J).

[33] MCL 777.61 and MCL 777.62.

[34] *People v Stone*, 463 Mich 558, 565; 621 NW2d 702 (2001).

specifically provide for life sentences in a number of instances "falls far short of a legislative directive that rescinds the particularized statutory grant of discretion to impose a life sentence against our most dangerous repeat offenders."[35] The dissent's argument overlooks the most basic truth of the sentencing guidelines scheme: the authority and discretion of a sentencing judge to impose a maximum sentence—or any other sentence—authorized by statute is not rescinded by the sentencing guidelines. Rather, the sentencing guidelines merely provide guidance to the sentencing judge and impose an obligation on the sentencing judge to justify a sentence that departs from that guidance.[36]

We agree with the dissent that defendant is a hardened contract killer who has planned and engaged in a series of deadly criminal enterprises. He is deserving of enhanced criminal penalties and, in fact, will spend the rest of his life in prison on the basis of his murder convictions. But when the dissent states that "the trial court placed on the record substantial and compelling reasons justifying the departure"[37] and, therefore, our colleague would affirm the sentence, he overlooks the fact noted above: we cannot affirm a sentence merely because we can identify substantial and compelling reasons that justify a departure. Rather, as a court of review, we review the reasons the trial court identifies as substantial and compelling reasons for a departure. Here, while the reasons the trial court stated for the sentence imposed may well constitute substantial and compelling reasons for a departure, the trial court did not identify them as such because the trial court did not

---

[35] *Post* at 480-481.
[36] MCL 769.34(3).
[37] *Post* at 481.

recognize that it was imposing a sentence that represented a departure from the sentencing guidelines.

Accordingly, we must remand the matter to the trial court for resentencing on this charge. On remand, the trial court may either impose a sentence within the guidelines recommendation or impose a sentence that departs, including reimposing the original life sentence. But if the trial court imposes a sentence that departs from the guidelines, it shall comply with the requirement of articulating the reasons that justify the departure.

Affirmed in part and remanded for resentencing in part. We do not retain jurisdiction.

SCHUETTE, P.J. (*concurring*). I join in the conclusions reached in the lead opinion authored by my distinguished colleague, Judge DAVID H. SAWYER. However, as eloquent as he is, equaled only by the pen of my distinguished colleague Judge PETER D. O'CONNELL, I refrain from engaging in the legal colloquy concerning the application of *People v Mack*, 265 Mich App 122; 695 NW2d 345 (2005), and *People v Houston*, 261 Mich App 463; 683 NW2d 192 (2004), and the errors, if any, contained in those opinions. Neither *Mack* nor *Houston* is dispositive of the case at bar. Further, there is no reason to declare a conflict with either case pursuant to MCR 7.215(J).

The case before this Court must be remanded to the trial court for an articulation of the reasons for defendant's sentence for the second conviction of felon in possession of a firearm which sentence represents an upward departure from the sentencing guidelines. *People v Babcock*, 469 Mich 247, 255-257; 666 NW2d 231 (2003). Defendant is a hardened contract killer. He has engaged in a series of planned criminal acts with

deadly results. He is behind bars. He will remain behind bars. The trial court must simply state on the record the reasons (and many reasons exist) for a proper upward departure in sentencing defendant.

O'CONNELL, J. (*dissenting*). The majority holds that defendant's life sentence was a departure from the minimum sentence guidelines range, but concedes that the sentence was proportionate to this criminal and this conviction.[1] I would hold that the habitual-offender statutes provide the sentencing court with the discretion to sentence defendant to life imprisonment. I would also recognize that life imprisonment is a determinate sentence that does not carry a minimum term, so legislative guidelines for setting a minimum term simply should not apply.

Defendant is a contract killer. His convictions represent the outcome of two out of three trials he faced for the murders of three separate victims. At the murder trial for codefendants Ernest Gordon III and Corey McCullough, defendant testified that he alone, not his codefendants, killed Ian French. He killed one of his victims at the behest of a drug dealer who suspected the victim of providing information to the police. He has a long and violent criminal history and began his occupation as a street assassin shortly after his release from prison on another violent crime.

I first note that the sentence of life imprisonment for being a felon in possession of a firearm is expressly allowed under the felon-in-possession statute and the relevant enhancement provision for habitual offenders. The statute that enhances the sentence of a fourth-time felony offender states, "If the subsequent felony is

---

[1] In my opinion, it is a waste of judicial resources to remand this case to the trial court for resentencing.

punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court . . . may sentence the person to imprisonment for life or for a lesser term." MCL 769.12(1)(a). A first-time conviction for felon in possession of a firearm is punishable by up to five years in prison. MCL 750.224f(3). Therefore, MCL 769.12(1)(a) allows a court to sentence a defendant to life imprisonment under the enhancement schedule, and defendant's sentence to life imprisonment was allowed by statute.

This Court's recent decision in *People v Houston*, 261 Mich App 463, 475; 683 NW2d 192 (2004), holds that a life sentence may still be a departure if the upper end of the minimum sentence guidelines range is less than three hundred months. Under that case, defendant's life sentence represents a departure from the guidelines. I disagree with *Houston* and would not follow it if it were not binding precedent.

Life sentences do not (and may not) carry minimum terms, *People v Johnson*, 421 Mich 494, 497-498; 364 NW2d 654 (1984), so the *minimum* sentence guidelines should not affect them. The sentencing guidelines only require that "the minimum sentence imposed by a court . . . shall be within the appropriate sentence range . . . ." MCL 769.34(2). In this case, the trial court did not impose a minimum sentence (presumably because *Johnson* and MCL 769.9[2] prohibited the practice) and, instead, the court exercised its statutory discretion to sentence defendant to life imprisonment. Without a minimum sentence, the restriction in MCL 769.34 was not violated, and defendant's argument that his life sentence constitutes a departure lacks legal merit. While I understand that the Legislature included life sentences in the guidelines as a permissible sentence under some circumstances, this fact falls far short

of a legislative directive that rescinds the particularized statutory grant of discretion to impose a life sentence against our most dangerous repeat offenders. I note that even the panel in *Houston* was required to guess at when the guidelines might allow a trial court to impose a life sentence in a habitual-offender case. The panel's final estimate was not based on any statutory mandate, but on a compromise based on the general range of numbers the Legislature provided for first-time offenses. In my opinion, if the Legislature intended to use a loose designation in a sentencing grid to revoke its authorization of defendant's life imprisonment, it would have indicated that intent directly.

Furthermore, the trial court placed on the record substantial and compelling reasons justifying the departure, so I would affirm the sentence. The trial court emphasized that defendant had taken every opportunity to obtain lethal weapons and use them on others, even while he was in prison. While defendant argues that this justification gave unfair consideration to prior convictions that were already used to calculate his guidelines range, the sentencing court did not emphasize the convictions as much as their temporal proximity. The facts that defendant wasted no time in establishing a new and homicidal criminal enterprise after his release from prison and that short time spans separated his other offenses were objective and verifiable reasons for departing from the sentencing guidelines range. These reasons were substantial and compelling and correctly led the court to conclude that defendant would likely never be rehabilitated. Therefore, they justified the court's discretionary imposition of the life sentence. *People v Babcock*, 469 Mich 247, 256-257; 666 NW2d 231 (2003).

The jury found that defendant, a hardened contract killer, was at least carrying a firearm during Moore's murder, even if it doubted defendant's role as the shooter. Therefore, given this fact and defendant's extensive and violent criminal history, the sentence of life imprisonment was proportionate to this crime and this defendant. *Id.* at 264.

Finally, our recent decision in *People v Mack*, 265 Mich App 122; 695 NW2d 345 (2005), settles this issue. In *Mack*, we explained that when it is ordering concurrent sentences, a sentencing court need only calculate the guidelines for the "crime having the highest crime class . . ." *Id.* at 127, quoting MCL 771.14. In *Mack*, we found that the sentence for the greater charge fell within the guidelines range, so the sentencing court was not required to calculate and adhere to the guidelines for the lesser offense. *Mack, supra* at 127. It follows that any qualms about the guidelines application to defendant's conviction for felon in possession of a firearm is rendered moot by defendant's conviction and life sentence for the murder of Larry Rogers.

I would affirm defendant's sentence.