# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ENRIQUE ALONSO OLVERA,

        Defendant-Appellant.

UNPUBLISHED
June 15, 2017

No. 332044
Kent Circuit Court
LC No. 15-007010-FH

Before: O'BRIEN, P.J., and HOEKSTRA and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of delivering 50 to 450 grams of a controlled substance, MCL 333.7401(2)(a)(*iii*). The trial court sentenced defendant to 20 to 40 years' imprisonment and ordered him to pay $6,250 in restitution. We affirm defendant's conviction, but remand for further proceedings with regard to the restitution award.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2014, while incarcerated, Roberto Medina contacted officials to offer information about defendant's alleged drug sale operation. Medina was placed in contact with Special Agent Tom Schifini of the Department of Homeland Security. After meeting with Medina, Schifini wrote a letter to Medina's parole board. In the letter, Schifini requested that Medina be released so that he could work as a confidential informant. Shortly thereafter, Medina was released, and Schifini placed him in contact with Detective Jose Gamez of the Metropolitan Enforcement Team (MET). After speaking with Medina, Gamez concluded that Medina was reliable and credible enough to use as a confidential informant. Gamez decided to work with Medina and assigned Detective Greg Alcala as his control officer.

Alcala directed Medina to set up a drug buy with defendant for November 19, 2014. Defendant and Medina arranged for the buy to occur at defendant's residence. On the day of the transaction, but before it occurred, Medina met with Alcala, who searched Medina to ensure that Medina was unarmed and did not have any narcotics or money on his person. Alcala then gave Medina $450 as "buy money" and drove Medina to defendant's residence. Once there, Medina went inside defendant's house and gave defendant the buy money. In return, defendant gave Medina cocaine. When Medina left defendant's house, he went directly to Alcala and gave him the cocaine.

-1-

Alcala asked Medina to set up a second drug buy, this time for more cocaine. Medina arranged for the buy to occur on November 25, 2014, at a local restaurant. Alcala met Medina around 6:30 p.m., searched him, gave him $1,800 as buy money, and drove him to the restaurant. While Medina was meeting with defendant at the restaurant, they were joined by a third party who was not identified at trial. While the third party was present, Medina gave defendant the buy money and defendant gave him cocaine. After dinner, Medina left with defendant in defendant's truck. Alcala and other officers followed defendant's truck. Eventually, Medina exited defendant's truck and met with Alcala, who was waiting in an unmarked car. Medina gave Acala two baggies of cocaine.

Alcala directed Medina to set up a third transaction with defendant and request more cocaine than he had requested for the November 25 transaction. On December 4, 2014, Medina received a call from defendant to set up the exchange. The two planned for the exchange to take place at the same restaurant as had the November 25 transaction. Alcala drove Medina to the restaurant, searched him, and gave him $4,000 as buy money. When they arrived at the restaurant, defendant was not there, so Alcala waited with Medina while other officers conducted surveillance of defendant.

Trooper Roberto Anaya, a Michigan State Police officer assigned to the MET, was part of the December 4 surveillance operation of defendant. Anaya followed defendant from his work to a Meijer store on Alpine Avenue. Defendant did not go into the store, but rather drove around the parking lot and left. Anaya then followed defendant to a gas station with an attached fast food restaurant. Gamez was also part of the surveillance operation and observed defendant at the gas station. When Gamez first pulled into the gas station, he recognized, from a previous investigation, a pickup truck that belonged to a man named Christopher O'Brien. Gamez pulled up to one of the pumps and saw O'Brien sitting in the adjacent restaurant with what appeared to be a small package.

O'Brien testified that he held drugs for defendant and would meet defendant to give him the drugs when defendant needed them. On December 4,[1] O'Brien was supposed to meet with defendant and give him some cocaine. The meeting was supposed to occur at a Meijer store on 10 Mile Road, but defendant mistakenly went to the Meijer store on Alpine. The two then decided to meet at the gas station instead. The officers surveilling defendant observed defendant meet with O'Brien, but none of them saw an exchange between them. However, Anaya observed defendant and O'Brien walking out of the restaurant together and saw that defendant was holding a small package. O'Brien testified that he had given defendant cocaine when they met.

Shortly after this exchange occurred, defendant called Medina, who was sitting next to Alcala. Alcala heard defendant tell Medina, "I've got the stuff." After receiving the call,

---

[1] During trial, O'Brien could not remember the exact date, but stated that he met with defendant in early December. According to officers' testimony, the events that O'Brien described when he met with defendant in early December took place on December 4.

Medina went into the restaurant to wait for defendant. When defendant arrived, Medina gave him the buy money and defendant delivered the cocaine to Medina. Medina left the restaurant, went directly to Alcala, and gave him the cocaine.

At Alcala's direction, Medina set up a fourth transaction, for 3 ounces of cocaine, to occur on December 21, 2014. That same day, defendant contacted O'Brien and requested 3 ounces of cocaine. However, while O'Brien was on his way to meet defendant, he was stopped by police. The officers found 3 ounces of cocaine in O'Brien's possession, and O'Brien admitted to them that he was taking the cocaine to defendant.

Defendant was charged with one count of delivery of 50 to 450 grams of a controlled substance, relating to the December 4 transaction only.[2] Before trial, the prosecution submitted a notice of its intent to use evidence of the November 19 and 25 transactions and the December 21 incident involving O'Brien as other-acts evidence. Defendant filed a motion in limine to contest this evidence. After voir dire but before trial, the trial court heard the parties' arguments on defendant's motion. The trial court stated that other-acts evidence was admissible to show a common plan or scheme as well as to refute a defense of fabrication and held that the evidence was admissible.

Defendant was convicted, sentenced, and ordered to pay restitution as described above. This appeal followed.

## II. ADMISSION OF OTHER-ACTS EVIDENCE

Defendant first argues that the trial court erred by admitting evidence of his other cocaine sales to Medina as other-acts evidence. We disagree. "This Court reviews a trial court's evidentiary ruling for an abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). This Court "review[s] de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (citation and quotation marks omitted).

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or

---

[2] Defendant was charged in separate cases in connection with his activities on November 25 and December 21, 2014; those charges are not part of this appeal.

absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"MRE 404(b) requires the exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense." *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012). In determining whether other-acts evidence is admissible, a court should consider the *VanderVliet*[3] factors:

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (citation and quotation marks omitted).]

In regard to the first factor, "[w]here the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded." *Id*. However, this "rule is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010). In this case, the prosecution sought to introduce the other-acts evidence to refute defendant's fabrication defense (i.e., defendant's claim that Medina had fabricated his testimony). The prosecution also sought to introduce the December 21 evidence to show defendant's system of receiving and delivering cocaine. On their face, these are proper purposes under MRE 404(b)(1).

With respect to the second factor, "[t]he prosecution bears the initial burden of establishing the relevance of the evidence to prove a fact other than character or propensity to commit a crime." *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "While there [may be] some dissimilarities between the charged acts and the other bad acts, a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). However,

---

[3] *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

-4-

"[g]eneral similarity between the charged and uncharged acts does not, [] by itself, establish a plan, scheme, or system used to commit the acts." *Sabin*, 463 Mich at 64.

Here, evidence of the December 21 events established a common system in which defendant received drugs from O'Brien. The events from December 4 and December 21 evidenced more than general similarities. See *id*. In each instance, defendant contacted O'Brien and requested an amount of cocaine; O'Brien then obtained the amount of cocaine requested and went to meet defendant in a public place to deliver it. On December 4, officers actually witnessed defendant meet with O'Brien; shortly after the meeting, defendant contacted Medina and stated that he had "the stuff." On December 21, defendant contacted O'Brien and requested 3 ounces of cocaine, the same amount that Alcala had asked Medina to request from defendant. When troopers stopped O'Brien on December 21 and found the cocaine, O'Brien told them that he was taking it to defendant. These acts are sufficiently similar to establish a common scheme or plan in which defendant would contact O'Brien for drugs and O'Brien would deliver the drugs to defendant; in fact, the primary difference between the two acts appears to be that the police intervened and prevented O'Brien from completing the exchange on December 21. See *Steele*, 283 Mich App at 480. Further, if on December 21 O'Brien was delivering the amount of drugs to defendant that defendant was supposed to deliver to Medina, then it was more probable that, on December 4, defendant had received drugs from O'Brien at the gas station and delivered those drugs to Medina. *Crawford*, 458 Mich at 387. Defendant's connection to the December 21 events with O'Brien was of "similar misconduct," and therefore was "logically relevant" to show a common plan or scheme that defendant followed. *Sabin*, 463 Mich at 64.

Other-acts evidence is also admissible "to refute [a] defendant's allegations of fabrication of charges." *People v Starr*, 457 Mich 490, 502; 577 NW2d 673 (1998). Here, defense counsel argued that Medina had fabricated his testimony regarding the events of November 19, November 25, and December 4, in order to get revenge on defendant for Medina's incarceration following an earlier arrest while in defendant's truck. During defense counsel's closing argument, counsel stated:

> They want to say that Medina said that he was going to provide information about many drug dealers, but you heard Medina sit here and say that the only person he's worked against is [defendant].

> You heard him say that out of his mouth. So that this guy is in jail for 18 months, and I guess he is thinking about, *why am I here?* In some kind of way in his mind, he blames [defendant], because it was – he was in [defendant's] truck. He was in [defendant's] truck when he was arrested and he was put in prison. So he spends that 18 months attempting to come up with a plan, *how am I going to get this guy*, who he, in some kind of way, for whatever reason, holds responsible for him going to prison.

In light of defendant's fabrication defense, evidence of the November 19, November 25, and December 21 other acts was admissible. All of the other acts "confirmed that the prosecution's key witness," Medina, "did not merely invent the circumstances of the criminal activity." *People v Johnigan*, 265 Mich App 463, 466; 696 NW2d 724 (2005). The November

19 and 25 other-acts evidence demonstrated that Medina had had similar dealings with defendant before December 4, which made it less likely that Medina had fabricated his testimony regarding the criminal activity that occurred on December 4. Likewise, the December 21 evidence confirmed that defendant had access to a supply of cocaine from O'Brien, which made it possible for defendant to deliver cocaine to Medina on December 4. Moreover, these other acts filled "chronological and conceptual void[s] regarding the events[.]" *Starr*, 457 Mich at 502. The November 19 and 25 transactions explained why officers were following defendant before the December 4 transaction. The December 21 evidence explained how defendant obtained his supply of cocaine for sale. Without the December 21 evidence, defense counsel could have argued that defendant did not have access to cocaine, and therefore could not have delivered the cocaine to Medina. Accordingly, because evidence of all of the other acts was necessary "to disprove allegations of fabrication," they were relevant for nonpropensity purposes. *Johnigan*, 265 Mich App at 466-467.

With regard to the third *VanderVliet* factor, this Court must determine whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under MRE 403. *Knox*, 469 Mich at 509. "The probative force inquiry asks whether the proffered evidence tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Crawford*, 458 Mich at 389-390 (quotation marks omitted). MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *Id*. at 398.

In this case, the fact that defendant had previously delivered cocaine to Medina on November 19 and 25 made it more probable that he delivered cocaine to Medina on December 4. Therefore, those other acts were clearly probative. See *id*. at 389-390. To the extent that this evidence may have been prejudicial, the trial court instructed the jury to only consider the other-acts evidence for the purpose of deciding whether it tended to show a common plan or scheme or whether it rebutted defendant's fabrication defense. Jurors are presumed to follow the trial court's instructions. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Therefore, the trial court's limiting instruction counterbalanced the jury's possible temptation to give this evidence unfair prejudicial weight. See *People v Martzke*, 251 Mich App 282, 295; 651 NW2d 490 (2002). ("A carefully constructed limiting instruction rendered by the trial court would be sufficient to counterbalance any potential for prejudice spawned by the other acts evidence.").

Evidence that O'Brien was bringing defendant cocaine for the December 21 transaction when police stopped him was also probative. The December 21 events made it more probable that defendant received cocaine from O'Brien during their December 4 meeting, which placed cocaine in defendant's possession that he could have subsequently given to Medina. See *Crawford*, 458 Mich at 389-390. Further, as previously discussed, the trial court gave the jury a limiting instruction. Because the jury is presumed to follow the trial court's instructions, the limiting instruction counterbalanced the possibility that the jury gave this evidence unfair prejudicial weight. See *Martzke*, 251 Mich App at 295.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues that defense counsel was ineffective for failing to impeach Medina using his prior criminal history in Michigan and statements that Medina had made during his preliminary examination. We disagree. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "The trial court's factual findings [if any] are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Defendant did not move in the trial court for a new trial or *Ginther*[4] hearing and did not move in this Court to remand for an evidentiary hearing. Our review is therefore limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); *Matuszak*, 263 Mich App at 48.

A defendant must meet a two-part test to warrant a new trial based on ineffective assistance of counsel: "First, the defendant must show that counsel's performance fell below an objective standard of reasonableness," and "[s]econd, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). When claiming ineffective assistance of counsel, the "defendant bears a heavy burden in establishing that counsel's performance was deficient and that [the defendant] was prejudiced by the deficiency." *People v Lopez*, 305 Mich App 686, 693-694; 854 NW2d 205 (2014).

Defendant argues that defense counsel was ineffective for failing to impeach Medina regarding his criminal history in Michigan. Decisions regarding what evidence to present are presumed to be matters of trial strategy, "and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defense "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich App at 242. While a difference in trial strategy does not amount to inadequate representation, defense counsel may be found ineffective where there is no strategic advantage in failing to investigate a witness's prior criminal record and then failing to impeach that witness. See *People v Nickson*, 120 Mich App 681, 685; 327 NW2d 333 (1982).

There is nothing in the lower court record to indicate that defense counsel failed to investigate Medina's criminal history in Michigan. To the contrary, defense counsel appeared knowledgeable regarding Medina's criminal history because counsel was aware, and questioned Medina regarding the fact, that Medina was arrested in Michigan while in defendant's truck. Defense counsel also questioned Medina about the prison sentence he was serving when Medina came forward with information about defendant, and about a prison term that he was then

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

serving in Illinois. Defense counsel's decision not to question Medina further about his criminal history was not objectively unreasonable considering that defendant may have been involved in that history; after all, Medina had been arrested in defendant's truck.

Further, even if it was objectively unreasonable for defense counsel not to question Medina further regarding his criminal history in Michigan, defendant was not prejudiced by that error. Defendant argues that he was prejudiced because this evidence would have brought Medina's credibility into question. However, defense counsel in fact made substantial efforts to call Medina's credibility into question. Medina admitted that he was incarcerated when he first came to authorities to tell them that he had information. On cross-examination, Medina revealed that he was then currently incarcerated in Illinois for assault and battery with a weapon. Medina also admitted that he received a prison sentence after he was arrested in defendant's truck, which defense counsel later argued gave Medina a motive to fabricate his entire testimony. Lastly, defense counsel used Schifini's testimony (that he had written a letter asking for Medina's release) to bring Medina's credibility into question by arguing that Medina had lied about defendant in return for an early release from prison. Accordingly, defendant failed to overcome the "heavy burden" that he was prejudiced by defense counsel's performance at trial because defense counsel presented ample evidence that brought Medina's credibility into question. *Lopez*, 305 Mich App at 693-694.

Next, defendant argues that defense counsel was ineffective at trial for failing to impeach Medina with his inconsistent statements regarding the reason that Medina had chosen to come forward with information. During trial, Medina testified that he came forward with information because it was "the right thing to do" and he wanted to avoid going back to prison. However, during his preliminary examination, and in response to the same question, Medina had stated that he could not remember why he worked for the police. Although defense counsel could have impeached Medina regarding this inconsistency, defense counsel does not need to impeach a witness "on all contradictory aspects of his preliminary examination and trial testimony" to be found effective. *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). As previously discussed, defense counsel subjected Medina to a rigorous cross-examination that sufficiently brought Medina's credibility into question. Therefore, defense counsel adequately protected defendant's interests, and his performance was objectively reasonable. See *id*. (holding that, because defense counsel subjected the witness to a "rigorous cross-examination" and attempted to impeach the witness's credibility, "counsel's performance was equal to that of a lawyer with ordinary training and skill and [] he conscientiously protected his client's interests"). Further, even if defense counsel was ineffective for failing to impeach Medina using his preliminary examination testimony, defendant has failed to show that he was prejudiced. As previously discussed, defense counsel adequately brought Medina's credibility into question. Defendant has not demonstrated that proof of Medina's inconsistency regarding his motives for coming forward would more likely than not have been outcome determinative. *Armstrong*, 490 Mich at 290. Accordingly, defendant has failed to overcome the "heavy burden" that he was prejudiced by defense counsel's performance at trial. *Lopez*, 305 Mich App at 693-694.

## IV. RESTITUTION

Lastly, defendant argues that the trial court erred by ordering defendant to pay $6,250 in restitution to the MET. We agree. "We review a court's calculation of a restitution amount for

an abuse of discretion[.]" *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Duncan*, 494 Mich at 722-723.

MCL 780.766(2) provides a statutory basis for restitution and states as follows:

[T]he [sentencing] court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.[5]

In *People v Crigler*, 244 Mich App 420, 427; 625 NW2d 424 (2001), this Court held that MCL 780.766 was "intended to permit narcotics enforcement teams to obtain restitution of buy money lost to a defendant as a result of the defendant's criminal act of selling controlled substance." However, the reach of MCL 780.766 is not unlimited. In *People v Newton*, 257 Mich App 61, 69; 665 NW2d 504 (2003), this Court distinguished *Crigler* in vacating a restitution award comprised of overtime expenses, holding that "the general cost of investigating and prosecuting criminal activity is not direct 'financial harm as a result of a crime.' " And in *People v McKinley*, 496 Mich 410, 420; 852 NW2d 770 (2014), our Supreme Court held that "conduct for which a defendant is *not* criminally charged and convicted is necessarily *not* part of a course of conduct that gives rise to the conviction," and, therefore, could not be used to support an award of restitution under MCL 780.766(2). (Emphases in original).

Here, the trial court ordered defendant to pay $6,250 in restitution. This was based on the November 19 transaction in which Medina paid defendant $450 in buy money; the November 25 transaction in which Medina paid defendant $1,800 in buy money; and the December 4 transaction in which Medina paid defendant $4,000 in buy money. However, defendant was only convicted in this case with regard to the December 4 transaction; he was not convicted with regard to the November 19 and 25 transactions. We therefore conclude that the trial court abused its discretion by ordering defendant to pay $6,250 in restitution. Portions of the restitution award consisted of losses sustained by law enforcement that were part of "the general cost of investigating and prosecuting criminal activity [that] is not direct 'financial harm as a result of a crime,' " *Newton*, 257 Mich App at 69, and that were not a result of "the offense of which defendant was convicted . . . that makes him subject to being ordered to pay restitution in the first place." *McKinley*, 496 Mich at 421. Accordingly, we vacate the trial court's order of restitution and remand for further proceedings on that issue only.

---

[5] Pursuant to MCL 780.766(1), "victim" may be used to refer to a "governmental entity." Therefore, the MET was properly considered a victim in this case. See *People v Crigler*, 244 Mich App 420, 427; 625 NW2d 424 (2001) (holding that a narcotics enforcement team could be awarded restitution under MCL 780.766 because it was a governmental entity).

Remanded for further proceedings with respect to defendant's ordered restitution. Affirmed in all other respects. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Joel P. Hoekstra
/s/ Mark T. Boonstra