*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEONTA JAMEL BELTON,

        Defendant-Appellant.

UNPUBLISHED
September 26, 2019

No. 337965
Wayne Circuit Court
LC No. 15-005145-01-FC

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Defendant, Deonta Jamel Belton, appeals[1] his jury trial conviction of armed robbery, MCL 750.529. Belton was sentenced to 4 to 15 years' imprisonment for his conviction. We reverse and remand for a new trial.

This case arises out of the armed robbery of Stanley Johnson. Johnson testified that he was robbed by two men, one of whom had a gun. Johnson did not know the men, and the encounter lasted between seven to ten seconds. More than a month after the robbery, Johnson noticed five or six men playing basketball on the street. Belton was one of the men playing basketball, and Johnson recognized him as the man who held the gun during the robbery. Johnson contacted law enforcement, and Belton was arrested and charged with armed robbery.

At trial, Belton's defense was that Johnson had mistakenly identified him as one of the men who robbed him and that he had an alibi. Several witnesses testified that Belton's hairstyle did not meet the description provided by Johnson; more specifically, the witnesses testified that

---

[1] Belton's delayed application for leave to appeal was originally denied by this Court; however, Belton filed an application for leave to appeal with the Michigan Supreme Court, and in lieu of granting leave, the Supreme Court remanded the case to this Court for consideration as on leave granted. *People v Belton*, unpublished order of the Court of Appeals, entered August 31, 2017 (Docket No. 337965); *People v Belton*, 593 Mich 855 (2018).

Belton had never worn his hair in "twists." Belton's aunt, Diane Belton-Fleming, testified that she saw Belton at home when the robbery occurred. During cross-examination, the prosecutor sought to play a portion of one jail call that was made by Belton for the purposes of impeaching Belton-Fleming's testimony. Before the jail call was admitted into evidence and a portion of the call was played before the jury, the following exchange occurred:

> *The Prosecutor*: At this time, your Honor, we're gonna move to admit Jail Call No. 7, actually I'll start it off so that she can identify her voice.

> *The Court*: Okay, and you've heard this call before, [defense counsel]?

> *Defense Counsel*: I don't know if I've heard this call before.

> *The Court*: But you have been provided with all the calls?

> *Defense Counsel*: I have been provided the disc of jail calls.

> *The Court*: Alright, any objection?

> *Defense Counsel*: I guess no.

> *The Court*: Ok.

Even though only a portion of the jail call was played for the jury, the entirety of the jail call was admitted into evidence.

During jury instructions, the trial court did not read an alibi instruction to the jury despite the fact that Belton was relying in part on an alibi defense. Defense counsel did not object despite having requested the instruction. Belton was ultimately convicted of armed robbery.

It was not until Belton's sentencing that he became aware that the requested alibi instruction was not provided to the jury. At sentencing, the trial court informed Belton that the instruction was mistakenly not provided to the jury. The trial court explained that it was unaware of the mistake until the prosecutor notified the trial court of the situation while the jury was still deliberating. The prosecutor then interjected and explained that this communication with the trial court occurred on the afternoon of September 30, 2015—approximately a day and a half before the jury reached its verdict on October 2, 2015.[2] In an effort to correct the mistake, the trial court explained at sentencing that it had asked the prosecutor to inform defense counsel of the trial court's mistake and find out from the defense whether it wanted the instruction to be given to the jury during deliberations. However, according to the prosecutor, the jury returned its verdict before she was able to speak to defense counsel.[3] Defense counsel reported at the

---

[2] The jury did not deliberate on October 1, 2015.

[3] The trial court mishandled the events following the failure to read the alibi jury instruction to the jury. The trial court should have taken immediate steps to hold a hearing about the missing

sentencing hearing that he did not know until that moment that the prosecutor had previously raised an issue relating to the alibi instruction with the trial court. Defense counsel stated that he would have asked the trial court to read the alibi instruction to the jury had he known about the issue, and he objected to the "nonreading of that instruction." The sentencing hearing proceeded, and Belton was sentenced to a term of imprisonment.

After sentencing, Belton filed a motion for a new trial based on assertions of ineffective assistance of counsel. In particular, Belton argued that his defense counsel was ineffective for failing "to (a) ensure the jury was instructed on the alibi defense; (b) present available expert testimony about the unreliability of the eyewitness identification; and (c) . . . redact inadmissible portions of at least one recorded jail call." The prosecutor opposed the motion. After hearing oral arguments on Belton's motion, the trial court held that it would be appropriate to hold a *Ginther*[4] hearing.

During the hearing, defense counsel testified that he did not notice that the trial court failed to read the alibi instruction to the jury. With respect to the jail calls, defense counsel stated that he received a disc of jail calls from the prosecutor before trial, and he listened to portions of the calls. However, he could not recall which of the 100 calls he listened to, and he testified that he did not have advance notice from the prosecution concerning which call or calls they intended to use. Defense counsel testified that he was not aware that the jail call admitted at trial contained references to another criminal matter involving Belton. Defense counsel also testified that he never considered moving the trial court for funds for an expert witness regarding eyewitness identification because he had made such requests in the past and they had been denied. He further noted that the Chief Judge had previously indicated that he would never approve funds for an expert witness in eyewitness identification.

Kyle Heika, one of the prosecuting attorneys, testified that he was aware the jury requested to hear the jail call in question when it was deliberating. Heika testified that he pulled up the call on his laptop and maximized the media player window before sending the laptop back to the jury room with instructions to push "play." Heika believed that the entirety of jail call was

---

alibi instruction with the parties as soon the trial court was made aware of the issue on September 30, 2015. Doing so would have alerted defense counsel to the issue as soon as possible and ensured that the jury was properly instructed. Instead, the trial court delegated its responsibility to the trial prosecutor who, even up to the time of sentencing, failed to inform defense counsel of the instructional defect. As a result, the jury was permitted to continue deliberating for nearly the entire morning of October 2, 2015, and ultimately reach a verdict without being properly instructed. Considering that the jury did not reach its verdict until 11:27 a.m. on October 2, 2015, the trial court had ample opportunity to have its staff notify defense counsel about the failure to provide the alibi instruction to the jury. Further, it is unclear why no mention of the defective jury instruction was made when the parties were assembled to receive the jury's verdict or even earlier that same day when a prosecutor from the trial team was in court responding to an unrelated jury question.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

sent back to the jury, and he could not recall if jail calls that were not admitted at trial were also on the laptop and disc that were sent back to the jury room. Thus, the jury potentially had access to other calls that were not in evidence.

At the close of the hearing, the trial court took the matter under advisement. The trial court later issued a written opinion, which denied Belton's motion for a new trial. More specifically, the trial court found that defense counsel was not ineffective for failing to call an expert witness in eyewitness identification at trial because the failure to call such a witness did not deprive Belton of a substantial defense as counsel presented the defense of mistaken identity. It also found that defense counsel's failure to notice that Belton referenced an unrelated criminal matter on the jail call was not objectively unreasonable as Belton could have warned counsel about the contents of the call and the call's primary focus was Belton's assertions of innocence. The trial court also noted that Belton knew jail calls were recorded so his comments regarding an unrelated criminal matter were made "at his own peril." Finally, the trial court held that the "error in failing to read the alibi instruction as requested by [Belton] rests solely on this Court." The trial court also held that defense counsel was not ineffective for failing to notice that the alibi instruction was not read to the jury because the court and the prosecutor also failed to notice this error.

On appeal, Belton argues that his right to due process was violated when the trial court failed to orally instruct the jury with an alibi instruction. We disagree.

Because Belton did not object in a timely, contemporaneous manner to the trial court's failure to give the alibi instruction, the issue is unpreserved.[5] "This Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 421; 884 NW2d 297 (2015). To avoid forfeiture under the plain error rule, three requirements must be met: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness,

---

[5] At Belton's sentencing hearing, the trial court stated "I prepared jury instructions that I provided to both sides in advance, both sides approved the jury instructions, and after my reading of the jury instructions, I asked if there were any objections to my reading of the jury instructions, and no one objected." Although the trial court was correct that neither party objected to the reading of the instructions, the record does not support the trial court's representation that the trial court asked counsel if they had any objections. Rather, the record establishes that the trial court read the instructions and then immediately excused the two alternate jurors. The trial court then instructed the remaining jurors that they would not be required to return on October 1, 2015. At no point did the trial court ask counsel if they had any objections to the instructions.

integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id*. at 763.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Jackson*, 313 Mich App at 420-421. "The jury instructions must include all elements of the charged offenses and any material issues, defenses, and theories if there is evidence to support them." *Id*. at 421. "We review jury instructions in their entirety to determine if reversal is required on the basis of an error in jury instructions." *People v Huffman*, 266 Mich App 354, 371; 702 NW2d 621 (2005).

Here, although it is not clear from the record whether the alibi instruction was given to the jury in writing, it is undisputed that the trial court did not read the instruction to the jury. In *People v Traver*, 502 Mich 23, 35; 917 NW2d 260 (2018), our Supreme Court "conclude[d] that the court rules affirmatively require oral instructions." Thus, the trial court's failure to read the alibi jury instruction to the jury was a clear and obvious error. See *Carines*, 460 Mich at 763. However, we find that this error did not affect Belton's substantial rights.

The alibi jury instruction states:

(1) You have heard evidence that the defendant could not have committed the alleged crime because [he / she] was somewhere else when the crime was committed.

(2) The prosecutor must prove beyond a reasonable doubt that the defendant was actually there when the alleged crime was committed. The defendant does not have to prove [he / she] was somewhere else.

(3) If, after carefully considering all the evidence, you have a reasonable doubt about whether the defendant was actually present when the alleged crime was committed, you must find [him / her] not guilty. [M Crim JI 7.4.]

Despite the fact that this instruction was not read, the jury heard evidence that Belton was somewhere else when the crime was committed. Belton-Fleming testified that Belton was home at all relevant times; the jury also heard defense counsel argue during his closing argument that Belton could not have committed the armed robbery because he had an alibi. The jury was instructed that the prosecutor had the burden to establish that Belton committed armed robbery beyond a reasonable doubt and that Belton was not required "to prove his innocense [sic] or do anything." The jury also received the identification jury instruction, which states, in part, "The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the defendant was the person who committed it." M Crim JI 7.8(1). Thus, because the jury was orally instructed that the prosecutor carried the burden of proving that it was Belton who committed the crime, the jury was aware that Belton could not be convicted of armed robbery if it found that he was at home with Belton-Fleming and therefore not present when the crime was committed. We conclude that the trial court's failure to read the alibi jury instruction to the jury did not affect Belton's substantial rights, i.e., affect the outcome of trial. See *Carines*, 460 Mich at 763.

Next, Belton argues that he is entitled to a new trial because defense counsel provided ineffective assistance for multiple reasons, each of which we will address below. Belton preserved this claim of error by filing a timely motion for a new trial and for a *Ginther* hearing. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. We review the trial court's findings of fact at a *Ginther* hearing for clear error, and review questions of constitutional law de novo." *People v McCauley*, 287 Mich App 158, 162; 782 NW2d 520 (2010) (citation omitted). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016).

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted).]

Belton first argues that defense counsel's failure to object to the trial court's failure to read the alibi instruction to the jury constituted ineffective assistance of counsel given that he asserted an alibi defense at trial. We disagree.

A defendant has the right to a properly instructed jury, and it reasonably follows that defense counsel therefore has a duty to ensure that the jury is properly instructed. See *Jackson*, 313 Mich App at 420-421. Thus, we conclude that defense counsel's failure to notice and address the fact that the trial court failed to read the alibi jury instruction fell below an objective standard of reasonableness under prevailing professional norms. See *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). However, as discussed *supra*, the trial court's failure to read the alibi instruction did not affect the outcome of Belton's trial. Therefore, there is not a reasonable probability that, but for counsel's error in failing to ensure that the trial court read the alibi instruction, the result of the proceedings would have been different. See *Armstrong*, 490 Mich at 289-290. Because Belton cannot establish that he was prejudiced, his claim of ineffective assistance of counsel in relation to defense counsel's failure to object to the trial court not reading the alibi instruction must fail. See *id*.

Next, Belton argues that defense counsel was ineffective because he failed to seek funds for and to present available expert testimony on the fallibility of eyewitness identification. We disagree.

Our Supreme Court has held that, in order to be entitled to appointment of an expert at state expense, "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *People v Kennedy*, 502 Mich 206, 228; 917 NW2d 355 (2018) (quotation marks and citation omitted). Here, Belton's proposed expert in witness identification likely would have assisted the defense because the expert could have strengthened

Belton's argument that this was a case of mistaken identity. However, it is well settled that "[a]n attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Even though defense counsel testified that he did not seek an appointment of an expert witness because he believed that the trial court would deny the request, defense counsel could have also reasonably assumed that the absence of expert assistance in this case would not, in light of defense counsel's cross-examination, result in a fundamentally unfair trial. Accordingly, defense counsel's decision to rely on cross-examination to impeach Johnson, rather than make a futile request for an expert in eyewitness identification, did not fall below an objective standard of reasonableness and counsel was not ineffective in this respect. See *Armstrong*, 490 Mich at 289-290.

Belton also argues that the trial court erred when it ruled that it would have found the expert testimony in eyewitness identification inadmissible. This argument is not encompassed in the statement of Belton's question presented, which focuses solely on whether defense counsel was ineffective. See *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009) ("[T]his issue was not properly presented for appeal because it was not raised in the statement of questions presented in defendant's appellate brief."). Because this issue was not properly presented, we will not consider it. See *id.*

Finally, Belton argues that defense counsel provided ineffective assistance of counsel when he failed to object to the admission of a recorded jail call and failed to ensure that the call was redacted to remove inadmissible, prejudicial evidence. We agree.

As already stated *supra*, a recorded jail telephone call was played for the jury at trial. However, because the court reporter did not record which portions of the 20 minute call were played, it is unclear what portions of the call the jury heard during trial. However, defense counsel stipulated to the admission of the full telephone call into evidence in its entirety. The jury later requested to hear this call during deliberations, and the entire recording of the call was sent back to the jury room. Because it is presumed by Belton and the prosecution that the jury listened to the call in its entirety, we will make the same presumption.

The telephone call was allegedly between Belton and Belton-Fleming.[6] It was made when Belton was in jail. In the call, Belton and the woman who is allegedly Belton-Fleming discussed a number of topics, including Belton's alibi. The call also contained references to another criminal case involving Belton and disparaging remarks about defense counsel, Johnson, and the police who conducted a search at Belton-Fleming's house. During the call, Belton said that when the police arrested him, they told him "You're under arrest for [inaudible] in the 19th District," and the person alleged to be Belton-Fleming mentioned that Belton had a warrant in Dearborn. Belton also referred to Johnson as an "old man" and a "n***a."

With respect to the references of Belton's district court case and outstanding warrant, evidence of other bad acts is only admissible "if such evidence is (1) offered for a proper purpose, (2) relevant under MRE 402 to a fact of consequence at trial, and (3) the danger of

---

[6] Belton-Fleming did not confirm that it was her voice on the call.

unfair prejudice does not substantially outweigh the probative value of the evidence." *People v Brown*, 294 Mich App 377, 385; 811 NW2d 531 (2011). "A proper purpose for admission is one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). Here, the prosecutor did not articulate a proper purpose for the admission of the other acts evidence contained on the recorded call, and it appears that no proper purpose actually existed. Instead, the only relevancy of the evidence would be to make Belton seem like a criminal and, thus, more likely to have committed the charged offense. This is impermissible, and the evidence was therefore not admissible. See *id.* Consequently, defense counsel's performance fell below an objective standard of reasonableness when he did not object to the admission of the full telephone call into evidence. See *Armstrong*, 490 Mich at 289-290. Moreover, defense counsel admitted at trial that he was not sure if he had heard the call before it was admitted into evidence in full. Thus, it cannot be said that there was a legitimate strategic reason for defense counsel to expose the jury to information about Belton having another pending criminal matter. See *People v Gioglio (On Remand)*, 296 Mich App 12, 23; 815 NW2d 589 (2012), remanded on other grounds 493 Mich 864 (2012).

Further, there is a reasonable probability that defense counsel's deficient performance prejudiced Belton. Not only was the jury exposed to prejudicial and inadmissible other bad acts evidence without a curative instruction from the trial court, but the jury likely heard the recording in the jury room while it was deliberating. The fact that the jury requested to hear the call while deliberating magnifies the impact that it had on the jury, especially when considering that the call was one of the last things that the jury considered before deciding to convict Belton of armed robbery. Further, in addition to the other bad acts evidence, the jury heard irrelevant matters such as Belton speaking disparagingly and at length about his lawyer, Johnson, and the police, all of which could have negatively impacted the jury's view of Belton. This is significant because the prosecution's case rested almost entirely on Johnson's eyewitness identification of Belton. "Where there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012) (quotation marks and citations omitted). Because defense counsel's deficient performance must be considered in the context of the minimal evidence supporting the jury's guilty verdict in this case, we find that that "there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." See *Armstrong*, 490 Mich at 289-290. Consequently, we must reverse and remand for a new trial.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel