*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEFFREY LYNN WATTS,

Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 341729
Wayne Circuit Court
LC No. 17-004764-01-FC

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(c) and MCL 750.520b(1)(f), one count of unlawful imprisonment, MCL 750.349b, and one count of assault by strangulation, MCL 750.84(1)(b). Defendant was sentenced to concurrent prison terms of 15 to 22½ years in prison for the CSC I and unlawful-imprisonment convictions, and 10 to 20 years for the assault conviction. On appeal, defendant argues that he is entitled to a new trial because his trial counsel's performance constituted ineffective assistance of counsel, because the presiding judge's factual findings with respect to the unlawful-imprisonment charge were inadequate, and because the chief judge violated defendant's constitutional right to due process when he "spun off" defendant's case from his docket to another judge's docket on the morning of trial. Defendant additionally argues that he is entitled to resentencing, arguing that the trial court erroneously assessed 15 points for offense variable (OV) 8. For the reasons set forth below, we affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise out of a night-long confrontation between him and his year-long girlfriend, the victim. According to the victim, after confronting defendant about being unfaithful, defendant subsequently strangled, raped, and assaulted her for several hours before ultimately allowing her to leave. According to defendant's theory of the case, however, the couple indeed argued over the fact that defendant had cheated on the victim with several other women, and the victim subsequently falsified the allegations as a means of revenge. After

hearing the victim's and other witnesses' testimony, reviewing photographs of the victim's injuries, and considering other evidence, the trial court found defendant guilty on all four counts.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises nine issues pertaining to the assistance afforded by his counsel. We find no error requiring reversal. Because no *Ginther*[1] hearing was held, our review is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Ordinarily, "[t]he determination whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

To establish ineffective assistance of counsel, "[a] defendant must first show that defense counsel's performance was deficient and . . . that counsel's deficient performance prejudiced the defense." *Payne*, 285 Mich App at 188 (quotation marks and citations omitted). The issue "[w]hether defense counsel's performance was deficient is measured against an objective standard of reasonableness." *Id*. "[T]o demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id*. at 188-189 (quotation marks and citation omitted).

## A. WAIVER OF RIGHT TO JURY TRIAL

Defendant first argues that his trial counsel misled him into waiving his right to a jury trial and agreeing to have a bench trial before a different judge. However, it is clear from the record that defendant's waiver was knowing and voluntary:

> *The Court:* All right. So, Mr. Watts, your trial is coming up here this morning. But I'm holding in my hand a so-called waiver of right to trial by jury.

> \* \* \*

> You, you understand that you can have a right to have your case heard and decided by a jury. And in a jury trial all 12 jurors have . . . to agree unanimously on any verdict they bring in?

> You understand that?

> *Defendant:* Yes.

> *The Court:* You have a right to waive your right to trial by jury and elect a bench trial, which is seemingly what you've done here. But I wanna make sure

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

you understand that there will be no jury involved at all. I would be the only one making the decision about whether you're guilty or not guilty.

You understand that?

*Defendant:* Yes.

*The Court:* And you're okay with that?

*Defendant:* Yes.

*The Court:* Has anybody promised you anything or threated you or suggested that I'd give you a break if you waive your right to a trial by jury?

*Defendant:* No, sir.

*The Court:* Are you doing this freely and voluntarily?

*Defendant:* Yes.

As we have recognized before, a clear record like this satisfies both the constitutional requirements and MCR 6.402(B). See, e.g., *People v Shields*, 200 Mich App 554, 560-561; 504 NW2d 711 (1993) (holding that a record nearly identical to the one here was sufficient to prove that the defendant's waiver of his right to a jury trial was understandingly and voluntarily given). Because this Court's analysis "is limited to mistakes apparent on the record," *Payne*, 285 Mich App at 188, we conclude that defendant's argument is without merit.[2]

### B. UNDELIVERED PLEA OFFERS

Defendant next argues that, because he "believes that other possible plea deals were given to his attorney" but not communicated to him, his attorney provided ineffective assistance. Nothing in the record, however, points to the existence of other plea offers. It would seem that defendant is merely speculating that there may have been "possible" offers not communicated to him and is asking for an evidentiary hearing to see whether his speculation might be confirmed. We are not inclined to order a remand so that defendant may engage in such a fishing expedition.

Moreover, it is worth noting that, at defendant's arraignment, the prosecution indicated that it was willing to accept the following offer: "There is an offer if Mr. Watts pleads to Counts One and Five, Count One being criminal sexual conduct in the first degree and Count Five being unlawful imprisonment, the People would agree to a prison sentence within the guidelines" and "dismiss the remaining counts." Then, the record reflects that, shortly before trial, at a pretrial hearing, the prosecution outlined the same plea offer. Thus, it would appear that the on-the-

---

[2] We also note that defendant has not provided an affidavit to support his assertion that his trial counsel "misled" him into waiving his right to a jury trial.

record plea offer remained the same throughout the entirety of the case, and given that our review is limited to mistakes apparent on the record, we conclude that defendant's speculation that there may have existed "possible" off-the-record plea offers more favorable to him to be without merit.

## C. POLYGRAPH EXAMINATION

Next, defendant argues that his trial counsel failed to advise him of his right to take a polygraph examination under MCL 776.21(5). Under that statute, a defendant who has been charged with CSC I "shall be given a polygraph examination or lie detector test if the defendant requests it." MCL 776.21(5). According to defendant, trial counsel should have told him about this and, assuming he took it *and had favorable results*, he could have used it to obtain dismissal or a more favorable plea deal.

However, as indicated above, to prevail on an ineffective-assistance claim, a defendant must demonstrate "that counsel's deficient performance prejudiced the defense," i.e., there is the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Payne*, 285 Mich App at 188-189 (quotation marks and citations omitted). Defendant has not met that burden. There has been no showing that a polygraph would have been favorable and thus could have been used to negotiate dismissal or a better plea deal. Defendant simply hypothesizes that a polygraph might have helped, which is not a sufficient basis for a new trial.

## D. ADJOURNMENT FOR RETAINING COUNSEL

Defendant next argues that his trial counsel failed to obtain an adjournment to allow defendant to retain replacement counsel. According to defendant, an evidentiary hearing is necessary to determine why the adjournment did not take place, and why defendant's counsel did not facilitate his retention of replacement counsel.

As defendant contends, he "ha[d] a constitutional right to defend [himself] through an attorney of his choice." *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993) (quotation marks and citations omitted). "However, the right to counsel of choice is not absolute." *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003) (quotation marks and citations omitted). Here, the judge originally assigned to defendant's case actually accommodated defendant's last-minute request to retain counsel just two weeks before trial, informing defendant that the court would adjourn the trial if defendant retained replacement counsel. The judge also explicitly warned defendant, however, "if you don't retain [replacement counsel,] then you're going to trial on the 25th."

Defendant states nothing on this point in his postconviction or appellate briefing. Instead, he simply asserts that trial counsel should have requested an adjournment and facilitated the substitution of counsel. However, as the trial court clearly indicated, an adjournment was not conditioned on defendant's appointed counsel requesting one or filing a motion; it was conditioned on defendant's retention of replacement counsel, something he apparently failed to do. Moreover, it was never the duty of defendant's appointed counsel to find defendant a new

attorney or otherwise retain an attorney on defendant's behalf. Accordingly, we reject this argument.

## E. CONFLICT OF INTEREST

Defendant next argues that his trial counsel acted unethically and created a conflict of interest by attempting to date defendant's friend, who was also a defense witness. According to an unnotarized, electronically signed "affidavit" from defendant's appellate counsel, the friend informed appellate counsel that defendant's trial counsel asked her to go on a date with him, and that the two went to a "breakfast meeting" where they discussed defendant's case.

Defendant has the burden to demonstrate "that counsel's deficient performance prejudiced the defense," i.e., the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Payne*, 285 Mich App at 188-189 (quotation marks and citations omitted). However, we note that it is impossible to tell from the record whether defendant's trial counsel actually asked the witness to breakfast as a date. And, even assuming for purposes of discussion that counsel was seeking a date, defendant has not pointed to anything his trial counsel or the witness would have done differently during trial but for that romantic interest.

This matter was a credibility contest, and defendant's trial counsel relied on the testimony of this witness and other witnesses to suggest that the victim was lying about the alleged sexual assault because she was angry that defendant had cheated on her. On appeal, defendant does not challenge or otherwise criticize that strategy in any way, so it is unclear what difference the purported conflict of interest would have made. Defendant is not entitled to relief on this ground.

## F. FAILURE TO INVESTIGATE

In his Standard 4 brief, defendant argues that his trial counsel failed "to conduct any pretrial preparatory investigative interviews of any of the prosecution's witnesses." According to defendant, his trial counsel should have interviewed all of the witnesses on the prosecution's witness list, including the ones who testified at trial. He also argues that this failure to investigate translated into a complete lack of trial strategy.

As this Court has recognized before, "[t]rial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). That is, "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Consequently, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

First, while trial counsel may not have interviewed the prosecution's law-enforcement and medical witnesses, defendant provides no explanation as to how those interviews may have made a difference in his counsel's strategy or may have allowed counsel to further impeach the witnesses. Moreover, the record reflects that trial counsel did, in fact, conduct a reasonable

investigation and adequately develop defendant's defenses. As indicated above, trial counsel did meet with at least one defense witness, and he also aggressively attacked the victim's credibility throughout trial. He also demonstrated a comprehensive knowledge of the case by confronting the victim with supposed discrepancies in her 911 call, discrepancies about the victim's contacts with the other women defendant was romantically involved with who testified at trial, and discrepancies between the victim's professional demeanor at trial as opposed to the provocative language she used in text messages. Trial counsel's ability to delve into specific details of defendant's sexual relationship with the victim and countless text messages to and from the victim reflects substantial preparation and investigation.

Again, this matter was a credibility contest, and accordingly, trial counsel strategically focused his efforts on investigating and impeaching the victim's credibility, and nothing in the record or defendant's brief on appeal suggests that additional interviews of witnesses were necessary, or that failing to conduct certain interviews hindered the defense.

## G. FAILURE TO FILE NOTICE

Defendant briefly suggests in his brief on appeal that trial counsel failed to file a "notice of intent" (actually, a motion) to introduce evidence of the victim's consensual sexual relationship with him as required by MCL 750.520j. Defendant makes this argument in his statement of questions presented, but fails to further explain the argument elsewhere in his brief. A party "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005) (quotation marks and citation omitted). Moreover, even assuming arguendo that defendant properly raised this argument on appeal, we note defendant's heavy reliance on the evidence in making his defense. Indeed, the nature of the relationship between defendant and the victim was crucial to his case. Defense counsel explored this and related issues throughout the trial with testimony and text messages. Any failure to file a motion did not inhibit defense counsel from, in fact, using the evidence or otherwise inhibiting the defense. Defendant cannot establish that he was prejudiced by his counsel's performance with respect to the failure to file a motion, and his claim is without merit.

## H. FAILURE TO RETAIN AN EXPERT WITNESS

Defendant additionally argues that trial counsel's failure to retain a rape-trauma expert to counter the prosecution's expert constituted ineffective assistance. Defendant does not, however, provide any indication as to what such an expert might have investigated or testified about *or* how that testimony or investigation might have made a difference. Defendant simply announces that counsel was ineffective for failing to retain an expert.

Again, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . . Such cursory treatment constitutes abandonment of the issue." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (quotation marks and citations omitted). If defendant believes he could have presented expert testimony to demonstrate that the victim's injuries were the result of consensual sex, not sexual assault, it was incumbent upon him to provide something to support or at least address that claim

on appeal. He did not. Instead, as indicated above, he simply announced that his trial counsel should have moved to retain an expert. That is insufficient to warrant a remand.[3]

## I. FAILURE TO INTRODUCE TEXT MESSAGES

Finally, defendant argues that his trial counsel failed to introduce text messages from the victim that would have hurt her credibility. As noted above, however, trial counsel attempted to impeach the victim's testimony with numerous text messages. He presented text messages to support the notion that the victim was angry with defendant and was trying to get back at him, and he tried to get her to admit that she simply wanted defendant to apologize for cheating on her as opposed to go to prison for rape. Most importantly, while trial counsel may not have presented every text message defendant wanted, "decisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Finally, upon review of the text messages cited by defendant, we cannot conclude that any of them would have made a difference at trial. At best, the messages show that the victim had mixed feelings about defendant, whom she admitted that she loved, being prosecuted; none of the messages are as exculpatory as defendant claims them to be.

## II. FACTUAL FINDINGS REGARDING THE UNLAWFUL-IMPRISONMENT CLAIM

Defendant next argues that his unlawful-imprisonment conviction must be vacated because the trial judge's factual findings with respect to that offense were insufficient. He argues, in full: "In this case, we simply do not know whether or not [the presiding judge] really found all the elements necessary for unlawful imprisonment beyond a reasonable doubt, as the record is silent. The conviction must be vacated." We disagree.

MCR 6.403 provides as follows:

When trial by jury has been waived, the court with jurisdiction must proceed with the trial. The court must find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record.

---

[3] Additionally, it cannot be overlooked that the prosecution's expert, a forensic nurse examiner, simply testified that the victim had numerous "body surface injuries," "a couple of lacerations," "bruises," two "small anal/genital injuries," as well as injuries consistent with having been strangled and dragged across a floor. Defendant's trial counsel was able to impeach that testimony to a degree, getting the nurse examiner to admit that the injuries could have resulted from consensual sex. Those efforts were consistent with defendant's theory of the case, which centered on the assertion that he and the victim had consensual sex. Defendant has made no attempt to explain what evidence a separate expert could have provided that the prosecution's expert could not.

"A judge who sits without a jury in a criminal case must make specific findings of fact and state conclusions of law." *Shields*, 200 Mich App at 558. "Factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992). Courts need not, however, "make specific findings of fact regarding each element of the crime." *Id*. "The sufficiency of factual findings cannot be judged on their face alone; the findings must be reviewed in the context of the specific legal and factual issues raised by the parties and the evidence." *People v Porter*, 169 Mich App 190, 193; 425 NW2d 514 (1988). "A court's failure to find the facts does not require remand where it is manifest that the court was aware of the factual issue, that it resolved the issue, and that further explication would not facilitate appellate review." *Legg*, 197 Mich App at 134-135.

The crime of unlawful imprisonment generally requires that a defendant knowingly restrain another person with a dangerous weapon, in secret, or to facilitate the commission of another felony or to facilitate flight after commission of another felony. *People v Bosca*, 310 Mich App 1, 18; 871 NW2d 307 (2015), held in abeyance by 911 NW2d 465 (2018), citing MCL 750.349b(1). "The term 'restrain' is defined within the statute as 'to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority.' " *Bosca*, 310 Mich App at 18, quoting MCL 750.349b(3)(a).

Here, the presiding judge found it "clear from [the victim's] testimony that she . . . was restrained in the defendant's home for apparently about six hours while this assault went on," i.e., to facilitate the commission of the felonies of assault by strangulation and CSC I. This analysis, while perhaps brief, showed that the trial court understood the factual issues and correctly applied the law. In our view, the trial court's analysis, when considered within the context of the rest of the judge's factual findings, was sufficient, and defendant's argument to the contrary is without merit.

III. DUE PROCESS AND MCR 8.111(C)(1)

Defendant further argues that MCR 8.111(C)(1) and his constitutional rights to due process were violated when his case was "spun off" from the chief trial judge to another judge minutes before trial and without the requisite written order. Defendant failed to preserve the issue by objecting below, and our review is therefore limited to plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

As defendant argues, " '[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.' " *People v Stevens*, 498 Mich 162, 179 n 5; 869 NW2d 233 (2015), quoting *Marshall v Jerrico, Inc*, 446 US 238, 242; 100 S Ct 1610; 64 L Ed 2d 182 (1980). "However, [a] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017) (quotation marks and citation omitted). Here, although defendant identifies the due-process guarantee to an impartial judge, he makes no argument that the judge that presided over his trial was biased in any way. Accordingly, his argument fails for that reason.

Regarding defendant's argument with respect to MCR 8.111(C)(1), the court rule provides:

(C) Reassignment.

(1) If a judge is disqualified or for other good cause cannot undertake an assigned case, the chief judge may reassign it to another judge by written order stating the reason. To the extent feasible, the alternate judge should be selected by lot. The chief judge shall file the order with the trial court clerk and have the clerk notify the attorneys of record. The chief judge may also designate a judge to act temporarily until a case is reassigned or during a temporary absence of a judge to whom a case has been assigned.

"The rule was intended to prevent judge shopping, to avoid the appearance of impropriety, and to equally distribute the workload of a court among the judges elected to that court." *People v Montrose*, 201 Mich App 378, 380 n 1; 506 NW2d 565 (1993).

Nothing in the record suggests that the court complied with MCR 8.111(C)(1). To begin, the record does not include a "written order stating the reason" the case was transferred, nor does the record reflect that the presiding judge was "selected by lot." While that requirement can be excused when it is not "feasible," the record does not reflect any determination in that regard. As a result, it seems that MCR 8.111(C)(1) was violated. However, that does not mean that reversal is required. "[D]efendant must show that the error resulted in the conviction of an actually innocent defendant or that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Kimble*, 470 Mich at 312 (quotation marks and citation omitted). Because defendant does not argue in any manner that the presiding judge was biased, he cannot show that a different outcome was possible or that the violation of MCR 8.111(C)(1) affected the fairness, integrity, or public reputation of the proceedings. See *People v Cain*, 498 Mich 108, 128-129; 869 NW2d 829 (2015) (holding that the trial court's failure to properly swear in a jury, which violated a court rule, did not require reversal under the plain-error standard). Accordingly, defendant has not established plain error.

## IV. OFFENSE VARIABLE 8

Lastly, defendant argues that he is entitled to resentencing because the trial court incorrectly assessed OV 8. We note that "[t]rial courts are afforded broad discretion in calculating sentencing guidelines, and appellate review of those calculations is very limited. Scoring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996).

"The rule that issues for appeal must be preserved in the record by notation of objection is a sound one." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000), citing *Carines*, 460 Mich at 762-765. This is because "[c]ounsel may not harbor error as an appellate parachute." *Id*. For that reason, "[a] defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Id*. (quotation marks and citation omitted). "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *Carter*, 462 Mich at 215 (quotation marks and citation omitted). During sentencing, defendant's

trial counsel expressly agreed to assessing 15 points for OV 8: "Um, OV 8, victim asportation or captivity. He was given 15 points on that. I believe that that scoring is supported by his having been found guilty of unlawful imprisonment." This constitutes a waiver.

Notwithstanding, even reaching the merits of the issue, defendant's trial counsel was correct. "OV 8 states that 15 points are to be assessed when '[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense.' " *People v Barrera*, 500 Mich 14, 15; 892 NW2d 789 (2017), quoting MCL 777.38(1)(a). And "OV 8 may properly be scored when the sentencing offense is unlawful imprisonment." *People v Chelmicki*, 305 Mich App 58, 70; 850 NW2d 612 (2014). Defendant was convicted of unlawful imprisonment based on his refusal to let the victim leave for the entire night during which the assaults took place, which was a significantly longer period of time than was necessary for defendant to commit the assaults. Thus, the factual record is sufficient to support the assessment of 15 points for OV 8.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-10-