*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM MICHAEL SMITH,

Defendant-Appellant.

UNPUBLISHED
June 17, 2021

No. 350656
St. Clair Circuit Court
LC No. 18-002937-FH

Before: GLEICHER, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of conspiracy to possess more than 50 grams but less than 450 grams of cocaine, MCL 750.157a and MCL 333.7403(2)(a)(*iii*), and possession of more than 50 grams but less than 450 grams of cocaine, MCL 333.7403(2)(a)(*iii*). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to concurrent terms of 15 to 47 years' imprisonment for each conviction. On appeal, defendant argues that the prosecutor and police officers plainly erred by referring to defendant by his street name of "Klepto" throughout the trial, and that the prosecution never noticed its intent to introduce prior bad-acts evidence of defendant's cocaine use at trial. Alternatively, defendant argues that defense counsel was ineffective for failing to object to both errors at trial. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a conspiracy between defendant and Brittany Brumfield to possess cocaine. In July 2018, defendant and Brumfield drove to a house in Detroit where defendant bought cocaine. Brumfield accompanied defendant a second and possibly third time to Detroit to buy cocaine. Thereafter, Brumfield made the trip to Detroit by herself; defendant would instruct Brumfield to make the trip by either showing up at her house or texting her. After Brumfield bought the cocaine using money given to her by defendant, she would take the cocaine directly to defendant's house. In exchange for making the trip, defendant would give Brumfield gas money and free cocaine. At trial, Brumfield testified that she made between six to eight trips to Detroit to buy cocaine for defendant.

In September 2018, members of the St. Clair County Drug Task Force (DTF) were surveilling Brumfield's and defendant's houses in Port Huron. Deputy Nathan Zuzga observed defendant and two other men arrive at Brumfield's house at the same time that Brumfield arrived. Brumfield testified that she arrived at her house and saw defendant, who had a key to the house, entering it with the two men. Brumfield followed the three inside to her bedroom. Brumfield saw an Arizona iced tea can on a table, but she did not remember whether the can was there when she left her house that morning. Defendant gave Brumfield some cocaine, which she inhaled. Approximately 10 minutes after the four went into the house, Deputy Zuzga saw defendant and the two men leave.

The DTF obtained and executed a search warrant for Brumfield's house. Brumfield was detained and approximately two grams of cocaine and a straw were found in her bra. Inside Brumfield's bedroom, Deputy Zuzga found an Arizona iced tea "hide-a-can."[1] Deputy Zuzga opened the hide-a-can and found five or six bags containing 108 grams of a cocaine mixture. Brumfield testified that she did not put the Arizona iced tea or Red Bull cans in the closet. But, she had seen defendant with the Arizona iced tea hide-a-can on previous occasions, and she believed that there was cocaine in it on those occasions.

At trial, defense counsel asked the trial court to address his motion in limine to exclude the testimony of Nicole York, defendant's parole officer. Counsel asserted that York's testimony concerning defendant's tether and an interview in jail would be unduly prejudicial. The trial court determined that York's testimony was relevant and the probative value outweighed the prejudicial effect. Regardless, to minimize any prejudice, the trial court cautioned the parties to "couch[] the questions in terms that do not elicit the determination as to the nature of their relationship, the location where the discussions took place, or the circumstances that gave rise to the need for that discussion."

York testified that she was an employee for the state of Michigan and had known defendant since April 2018. She knew that defendant had visited a house in Detroit twice in May 2018, six times in June 2018, eight times in July 2018, and three times in August 2018. York spoke with defendant about his visits to the house and "specifically asked him in regards to dealing drugs and whether or not he was participating in that." Defendant responded that he was a middleman for his friends because he was "able to get a good amount of cocaine at a better price," and he needed the money.

The jury convicted defendant as charged. This appeal follows.

---

[1] A hide-a-can "looks like a normal can and if you screw the very top of it it's got a kind of . . . screw thing into it with a h[o]llow void."

## II. PROSECUTORIAL MISCONDUCT[2]

Defendant argues that the prosecution improperly referenced defendant's street name of Klepto multiple times during trial, which deprived defendant of a fair trial. Alternatively, defendant argues that defense counsel was ineffective for failing to object. We disagree.

"Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008) (quotation marks and citation omitted). Defendant concedes that counsel did not object and that this issue is unpreserved. Accordingly, this Court examines whether the alleged error amounted to plain error that affected the defendant's substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 753-764; 597 NW2d 130 (1999) (quotation marks and citation omitted; alteration in original).

To preserve a claim of ineffective assistance of counsel, defendant must move for a new trial or a *Ginther*[3] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or a *Ginther* hearing, so this issue is unpreserved and "our review is limited to mistakes apparent on the record." *Id*.

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (quotation marks and citation omitted; alteration in original). A prosecutor may not advance an argument that "injects issues broader than the guilt or innocence of the accused into the trial." *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). Claims of prosecutorial misconduct are reviewed on a case-by-case basis, and the reviewing court must examine the record and evaluate the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010).

We agree with defendant's general contention that his nickname of Klepto was ultimately irrelevant to either of the charges. Although identity is an element of every crime, *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), defendant's nickname was irrelevant to his involvement in the drug charges—the police officers were all able to identify defendant by his legal name and Brumfield testified that she never called defendant by his nickname. However,

---

[2] This Court has explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," while only the most extreme cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). To the extent we use the phrase "prosecutorial misconduct," it is as a term of art.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

merely eliciting testimony that is not directly relevant did not, by itself, deny defendant a fair and impartial trial.

Defendant asserts that *Boyle v Million*, 201 F3d 711, 717 (CA 6, 2000) is instructive in this case because the United States Court of Appeals for the Sixth Circuit stated that name-calling is so deplorable that it defines prosecutorial misconduct. "Decisions of lower federal courts are not binding on this Court but may be considered for their persuasive value." *Slis v Michigan*, 332 Mich App 312, 361 n 25; 956 NW2d 569 (2020). In *Boyle*, the respondent appealed the district court's granting the petitioner a conditional writ of habeas corpus on the basis of prosecutorial misconduct. *Id*. at 712-713. During the petitioner's trial, the prosecutor engaged in a "startling display of unprofessional and unethical conduct . . . ." *Id*. at 714. The *Boyle* Court summarized the prosecutor's actions:

> Badgering and interrupting a witness, name-calling, predicting that the defendant will lie on the stand, and stating before the jury that the defendant is in need of psychiatric help are tactics so deplorable as to define the term 'prosecutorial misconduct.' Furthermore, closing arguments that appeal to class prejudices, encourage juror identification with crime victims, or vouch for the defendant's guilt would each be deemed beyond ethical bounds. To combine all three prejudicial ploys in one argument only compounds the error. [*Id*. at 717.]

Defendant asserts that *Boyle* stated the prosecutor's "name-calling" defines prosecutorial misconduct, but such a reading is overbroad. Instead, *Boyle* stated that name-calling, in addition to many other improprieties, established that the prosecutor engaged in misconduct. *Id*. at 717-718. Apart from the allegations of name-calling, defendant does not identify any other instances of misconduct. Because there are not numerous allegations of misconduct, *Boyle* is simply not applicable to this case.

Moreover, defendant's categorization of eliciting testimony concerning defendant's street name of Klepto as "name-calling" overstates what actually occurred. Reviewing the 13 instances that defendant identified where Klepto was referenced, it is clear that the references were strictly limited to identifying defendant. In almost all of the instances, the prosecutor asked a witness whether the witness was familiar with a person named William Smith or Klepto. Although Klepto does have a negative connotation, the witnesses were not calling defendant a kleptomaniac; they were merely identifying defendant by one of the names he was known by.

Defendant also argues that the prosecutor's references to him as Klepto prejudiced him because the jury was led to believe that he had the reputation of being a thief and untrustworthy. However, whether defendant was a thief or had a reputation as a thief was irrelevant to the drug-related charges. If this case involved a theft crime, then such references may have been prejudicial. But in the absence of any allegations of theft, connotations of thievery that the jury might have inferred did not prejudice defendant in relation to the drug charges.

Defendant alternatively argues that defense counsel was ineffective for failing to object to the testimony concerning defendant's nickname. To establish a claim of ineffective assistance of counsel, the defendant must first show that counsel's performance was deficient, and second, that counsel's deficient performance prejudiced defendant. *Payne*, 285 Mich App at 188. "To

demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id*. at 188-189. As discussed, the prosecutor did not engage in misconduct by commenting on defendant's nickname or eliciting testimony that identified defendant by his nickname. Failing to make a meritless objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). And, even if defendant could demonstrate that counsel performed deficiently by failing to object, he has not shown that he was prejudiced in light of the evidence presented. Thus, defendant's ineffective-assistance-of-counsel argument fails.

## III. BAD-ACTS EVIDENCE

Defendant argues that the admission of the bad-acts evidence was plain error because the prosecution did not provide notice of its intent to introduce such evidence and the evidence was not admitted for a permissible purpose. We agree that the prosecution failed to provide proper notice, but the error was harmless. Further, we largely disagree that the evidence defendant highlights was bad-acts evidence.

"In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). Defendant acknowledges that counsel did not object to the prior-acts evidence and that this issue is unpreserved. Accordingly, defendant "must demonstrate plain error affecting his substantial rights, meaning that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of his innocence." *Knox*, 469 Mich at 508.

Under MRE 404(b), "[u]se of other acts as evidence of character is generally excluded to avoid the danger of conviction based on a defendant's history of misconduct." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"If the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible." *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993). Conversely, "if the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character, Rule 404(b) is not implicated." *Id*. at 64. "If the evidence is relevant to a fact in issue (facta probantia), there may be no inference to conduct. The question is not whether the evidence falls within an exception to a supposed rule of exclusion, but rather whether the evidence [is] in any way relevant to a fact in issue other than by showing mere propensity." *Id*. (quotation marks and citation omitted; alteration in original). Thus,

Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1) if the evidence is (1) offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice, MRE 403. [*People v Williams*, 240 Mich App 316, 322-323; 614 NW2d 647 (2000) (quotation marks and citations omitted).]

In this case, defendant identifies two witnesses whose testimony allegedly involved improper bad-acts evidence. First, Brumfield testified that defendant provided her with cocaine and asked her to go to Detroit to buy the cocaine. Second, York testified that defendant had told her that he was a middleman in drug purchases. We address each in turn.

Defendant asserts that Brumfield's testimony involving defendant asking her to go to Detroit to buy cocaine and providing her with cocaine on several occasions constituted bad-acts evidence. The felony information charged defendant with participating in a conspiracy to possess cocaine from May 2018 through September 18, 2018. "Any person who conspires together with 1 or more persons to commit an offense . . . is guilty of the crime of conspiracy . . . ." See also *People v Mass*, 464 Mich 615, 632; 628 NW2d 540 (2001) ("The gist of a conspiracy is the unlawful agreement."). And "[w]hat the conspirators actually did in furtherance of the conspiracy is evidence of what they had agreed to do." *People v Hunter*, 466 Mich 1, 9; 643 NW2d 218 (2002).

Brumfield testified that defendant asked her to go to Detroit to buy cocaine with him in July 2018. Brumfield further testified that she accompanied defendant on two or three more trips, and that she made between six to eight trips by herself at defendant's behest. This testimony was not bad-acts evidence. Instead, it was offered for the purpose of showing that there was an unlawful agreement between defendant and Brumfield to possess cocaine. *Id.*; *VanderVliet*, 444 Mich at 64. Because Brumfield's testimony that defendant asked her to go to Detroit to buy cocaine was evidence concerning a fact at issue—whether defendant entered into an agreement to buy cocaine—and not whether defendant had the propensity or character to enter into agreements to buy cocaine, MRE 404(b) was not implicated. See *id*. Accordingly, the admission of this testimony was not plain error.

Defendant also asserts that Brumfield's testimony that he provided her with cocaine on several occasions was improper bad-acts evidence. Brumfield testified to multiple instances where defendant would provide her with cocaine, and defendant does not specifically identify which instance constituted a bad act for purposes of MRE 404(b). For example, Brumfield testified that she started buying cocaine from defendant. Then Brumfield testified that when she began making the trips to Detroit alone, defendant would provide her with gas money and free cocaine. Additionally, Brumfield testified that defendant gave her cocaine on the day of the DTF raid.

Concerning Brumfield's testimony that defendant would provide her with free cocaine for making the trips to Detroit, the prosecution used this evidence to argue that defendant was enticing Brumfield to participate in the conspiracy. Defendant's payment of cocaine to Brumfield was not a bad act under MRE 404(b) because the payment was evidence of the conspiracy. *Hunter*, 466 Mich at 9. Defendant and Brumfield agreed that she would drive to Detroit and buy the cocaine with money that defendant had given her. In exchange, defendant would give Brumfield some of

-6-

the cocaine. Because Brumfield's testimony that she was paid in cocaine for driving to Detroit to buy the cocaine was evidence of the conspiracy to possess cocaine and did not involve an inference of defendant's character, MRE 404(b) was not implicated. See *VanderVliet*, 444 Mich at 64. Thus, the admission of the testimony was not plain error.

Similarly, Brumfield's testimony that defendant gave her cocaine on the day of the raid was directly relevant to the issue of possession of cocaine. Brumfield testified that she knew that defendant had cocaine in the Arizona iced tea hide-a-can, and she believed that the cocaine defendant gave her came from the hide-a-can. This testimony was used to establish that defendant possessed the cocaine that was found inside the can. Because the testimony was elicited as evidence of defendant's possession of cocaine and did not involve an inference about defendant's character, MRE 404(b) was not implicated, see *VanderVliet*, 444 Mich at 64, and the admission of the testimony was not plain error.

However, Brumfield's testimony that she bought cocaine from defendant before the conspiracy came into being was bad-acts evidence with regard to MRE 404(b). This testimony concerned events that occurred before defendant and Brumfield entered into the agreement that Brumfield would drive to Detroit to buy cocaine. Brumfield's buying of cocaine from defendant also predated defendant's possession of cocaine in the Arizona iced tea hide-a-can. Therefore, the testimony that Brumfield bought cocaine from defendant was not substantive evidence involving either of the charges, and thus, implicated MRE 404(b).

This testimony is inadmissible bad-acts evidence because it was not offered for a proper purpose, such as showing defendant's preparation, scheme, or plan. MRE 404(b)(1). Instead, the only purpose of the testimony that we can discern is that it was most likely offered for the purpose of showing the drug-related history between defendant and Brumfield, which involves an inference of defendant's conduct and character as a drug-dealer. See *VanderVliet*, 444 Mich at 63. The minimal relevance of establishing the history between defendant and Brumfield was outweighed by the prejudice that the jury may view the evidence as showing that defendant had the propensity to possess cocaine. See *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998) ("Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."). Therefore, Brumfield's testimony that she had bought cocaine from defendant was inadmissible bad-acts evidence.

However, reversal is only warranted when it "affirmatively appear[s] that it is more probable than not that the error was outcome determinative." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001) (quotation marks and citation omitted). The admission of Brumfield's testimony that she had purchased cocaine from defendant was not outcome determinative. There was substantial evidence that defendant and Brumfield conspired to possess cocaine by driving to Detroit to buy the cocaine and that defendant possessed the cocaine that was found in the Arizona iced tea hide-a-can. Absent Brumfield's testimony that she bought cocaine from defendant before the events that led to the conspiracy and possession charges, we cannot conclude that the outcome of the case would have been different. *Id*. at 381. Accordingly, the error in the admission of the evidence was harmless, and reversal is unnecessary.

Defendant next argues that York's testimony that defendant admitted he was a middleman for his friends' drug dealings was also inadmissible bad-acts evidence. Generally, a defendant's

statement is not subject to MRE 404(b) because it "is just that—a statement, not a prior act." *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). Instead, defendant's statement was the statement of a party-opponent under MRE 801(d)(2)(A) ("A statement is not hearsay if the statement is offered against a party and is the party's own statement . . . ."). "[T]he appropriate analysis is whether the prior statement is relevant, and if so whether its probative value outweighs its potential prejudicial effect." *Goddard*, 429 Mich at 518. Defendant's admission to York that he was a middleman was relevant to the conspiracy and possession charges in this case because it was essentially an admission of guilt, and any unfair prejudice was minimal. See *People v Starr*, 457 Mich 490, 503; 577 NW2d 673 (1998) (second and third alteration in original) (stating that evidence is unduly prejudicial when it "stir[s] the jurors to such passion . . . as to [be swept] beyond rational consideration of [the defendant's] guilt or innocence of the crime on trial."). Accordingly, defendant's argument fails.

Next, defendant argues that the prosecution failed to provide notice of its intent to introduce bad-acts evidence at trial. Under MRE 404(b)(2):

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in [MRE 404](b)(1), for admitting the evidence.

The notice requirement in MRE 404(b)(2) requires the prosecution to identify and seek to admit only relevant bad-acts evidence; ensure that the defendant can object to and defend against the bad-acts evidence; and to allow the trial court to thoughtfully determine on the record whether to admit or exclude the bad-acts evidence. *People v Hawkins*, 245 Mich App 439, 454-455; 628 NW2d 105 (2001).

It is true that the prosecution did not file a written notice of its intent to seek the admission of bad-acts evidence. Nor did the prosecution provide oral notice at trial. Thus, the prosecution plainly erred by failing to comply with MRE 404(b)(2). However, this plain error does not necessitate reversal if the underlying aims of MRE 404(b)(2) have been met. See *Hawkins*, 245 Mich App at 455-456; *People v Dobek*, 274 Mich App 58, 86-88; 732 NW2d 546 (2007).

As discussed, the majority of the testimony that defendant challenges was not bad-acts evidence, but was instead relevant evidence that did not implicate MRE 404(b). Instead, the only bad-acts evidence that was admitted at trial was Brumfield's testimony that she had bought cocaine from defendant. On appeal, defendant alleges that he was prejudiced by the lack of notice because the trial court did not determine the admissibility of the evidence and defendant was not able to request a limiting instruction at trial. In *Hawkins*, 245 Mich App at 455-456, this Court declined to reverse the defendant's conviction when the prosecution failed to comply with MRE 404(b)(2):

> This does not mean that a failure to give notice will always be harmless error if the evidence was eventually determined to be admissible. Rather, and this brings us to the second factor, the harmless error standard requires us to consider the effect plain error has on a proceeding. Because Hawkins has never suggested how he would have reacted differently to this evidence had the prosecutor given

notice, we have no way to conclude that this lack of notice had any effect whatsoever. For instance, Hawkins has not suggested or created a record that would suggest that, had he known the prosecutor intended to introduce this evidence, he would have called another witness to testify, that his attorney would have objected to the evidence, or that he would have provided other evidence to counter the prior bad acts testimony.

The testimony at issue was admissible and an objection to the lack of notice would have been meritless. See *id.* at 455 ("Because this evidence was admissible, notice to Hawkins would not have had any effect on whether the trial court should have admitted it at trial, regardless of the record or arguments that could have been developed and articulated following notice."). Next, it must be determined the effect that the lack of notice had on the trial. See *id.* According to defendant, the only thing that he would have done differently with proper notice is that he would have requested a limiting instruction. Given the substantial evidence that defendant conspired to possess cocaine and that defendant possessed cocaine in the Arizona iced tea hide-a-can, a limiting instruction would not have affected the outcome of the trial. Thus, defendant has not demonstrated that the prosecution's lack of notice was plain error that warrants reversal.

Defendant alternatively argues that defense counsel was ineffective for failing to object to the unnoticed bad-acts evidence and to request a limiting instruction. Counsel was not ineffective for failing to object to the testimony that did not implicate MRE 404(b) because the testimony was proper and not objectionable. See *Ericksen*, 288 Mich App at 201. And to the extent that the bad-acts evidence was improper, defendant has not demonstrated prejudice. *Payne*, 285 Mich App at 188-189. Accordingly, defendant has failed to establish his claim of ineffective assistance of counsel.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Anica Letica